HALL, Judge.
The plaintiffs, a father and his son who was injured when bitten by a dog, appealed from a judgment in the amount of $35,000 rendered in accordance with a jury verdict, complaining that the damage award is too low and that the jury’s finding that the son was thirty percent negligent is erroneous.
This lawsuit presents the poignant story of a boy, his coach, and his coach’s watchdog who bit the hand (literally, the1 leg) that fed him.
The boy is David Bolen, a student and star athlete at Friendship Academy. He and his father, Donald V. Bolen, are the plaintiffs in this lawsuit.
The coach is Cecil Thibodeaux who taught math and was the head basketball and football coach at Friendship Academy. Coach Thibodeaux and his family lived in a trailer home on the school grounds, where the coach also had security responsibilities and mowed the grass when needed. Coach Thibodeaux, Friendship Academy, and their liability insurer are the defendants in this suit.
The dog is Bo, a large Bull Mastiff who strayed onto the campus of the academy, wounded, bleeding and tick infested. Bo was befriended and nursed back to health by Coach Thibodeaux who then used Bo to help guard the campus where vandalism and gasoline stealing had become a serious problem. Bo acquired somewhat of a reputation as a watchdog, partly because he looked mean and partly because of a story the coach made up and spread around about Bo having bit and run off some persons who were attempting to steal gasoline one night. Bo was known to have bitten a person on a moped who was teasing him. On another occasion Bo jumped into a pileup on the football practice field and bit one of the participants. The coach’s regular practice was to put Bo on a chain in the morning and then unchain him at night, but it appears that Bo pretty much had free run of the campus. He often went into the gym and lay on the floor while students practiced, and the students sometimes played around with him.
Before Coach Thibodeaux and his family went out of town during the Thanksgiving holidays in 1981, he asked David to feed Bo during his absence, which David was happy to do because he considered Bo his canine friend. David fed Bo as requested for several days, during which time Bo was not kept on the chain.
On Sunday night following Thanksgiving, David and some friends had finished playing basketball in the gym, which was a regular practice at the school. They left the campus in David’s pickup truck and then David went back to the gym with one of his friends to turn off the gym lights. He parked his truck about ten feet from the gym door with its headlights shining through the gym. When David got out of the truck Bo joined him and David went inside the gym with Bo tagging along. He walked across the gym, turned off the lights, and came back out with Bo still tagging along. As David started to climb into his truck Bo, for some unknown reason, clamped his massive jaws around David’s leg and pulled him to the ground. David was able to fight Bo off only after Bo had bitten a large “hunk of meat” from David’s right leg. David dived into his truck with Bo diving in right after him. However, Bo missed David and latched onto the truck seat with his teeth and would not let go. David got the truck *1282 started and was finally able to throw Bo out of the truck by driving in circles.
David drove to Coach Thibodeaux’s trailer and the coach, who had just returned home, took him to the hospital where he was treated for a severe and terrible looking dog bite injury. The next day Dr. John P. Valiulis, a plastic surgeon, debrided the wound while David was under a general anesthetic, but the wound could not be closed because of lack of sufficient skin to make a closure. For several days the wound was cleaned and dressed and washed out with whirlpool baths, during which time David suffered considerable pain. The plastic surgeon again performed surgery, grafting skin taken from David’s left buttock to his right leg. David was discharged from the hospital after fourteen days.
Some two months after the injury David was playing first-string basketball, and he was an all-state football player the following fall. He has no functional disability but does have a degree of permanent disability because a part of his leg and foot is permanently numb. The scar on his leg is somewhat unsightly, but more unsightly is the scar on his buttock from which the skin was taken for the graft. This scar in the shape of a square several inches wide darkened and became rough and itchy due to some genetic pigmentation problem. Outpatient surgery was required about a year after the injury to improve the condition of this scar which remains very unsightly. Fortunately, the scar is hidden by boxer-type shorts or swimsuit, but it is partly visible with jockey-type shorts or swimsuit. Medical expenses to the date of trial were $8,695.35. The plastic surgeon testified that the scars could be cosmetically improved about fifty percent with six or seven additional surgeries at a cost of some $28,000. The doctor said that he was not sure he would undergo the additional surgeries if it were himself, and David did not testify as to any plans to have the additional cosmetic surgery done.
After hearing the evidence, the jury, in answer to special interrogatories, found that the plaintiff knew the dog was dangerous and that the plaintiff voluntarily confronted a known danger and assumed the risk. The jury further found that Friendship Academy was sixty percent at fault, Coach Thibodeaux was ten percent at fault, and David was thirty percent at fault. The jury awarded $50,000 in damages which, when reduced by thirty percent, amounted to an award of $35,000 to David and his father. From a judgment rendered in accordance with the jury verdict, the plaintiffs appealed. The defendants did not appeal or answer the appeal.
On appeal the plaintiffs argue that the jury erred in finding fault on the part of David. It is argued that since the dog was friendly toward David and David had been assisting in the care and feeding of the dog without incident, he had no reason to suspect that the dog would suddenly attack him and consequently he was not at fault and did not assume the risk he encountered. The defendants argue that the jury was reasonable in determining that the plaintiff assumed the risk of being bitten by the dog and that the plaintiff was well aware of the dog’s propensity for biting, but nevertheless continued into the gym and turned the lights off even after he saw the dog was roaming the school yard.
After reviewing the evidence, we find that the jury was clearly wrong and manifestly erroneous in attributing any degree of fault to David. There were only two known incidents when Bo had bitten anyone and they appear to be minor in nature. On one of those occasions the dog was being teased and provoked. The other occasion involved a group of boys playing rowdily near the dog. These incidents were not significant enough to establish that the dog had known dangerous propensities or to cause David to suspect that Bo might launch an unprovoked attack against him. To the contrary, David’s experience with the dog had been good and he thought the dog was his friend. He had been around him in the gym and had fed him for several days without any problems. The fact that his coach asked him to care for *1283 the dog belies any reason for David to think that the dog was dangerous and likely to attack him. At the time the incident took place David was pursuing normal activities on the school grounds, walking in a normal manner with the dog tagging along, and did nothing whatsoever out of the ordinary that was likely to provoke an attack by the dog.
The burden was on the defendants pleading contributory negligence to prove that David failed to exercise the care for his own safety that an ordinarily prudent person would exercise under the same or similar circumstances. Under the circumstances there was no reason for David to believe that he was in danger of attack from the dog while going to and from the gym. The sudden attack by the dog was entirely unforeseeable by David. The defendants failed to establish any fault or negligence on the part of David.
As to the amount of damages, plaintiffs strenuously urge that the jury abused its discretion in failing to award a larger amount of general damages in addition to proven medical expenses of over $8,000 and future medical expenses of over $28,000. The defendants argue that the jury committed no abuse of discretion in the amount of damages awarded, citing the fact that David returned to his role as a star athlete at the school a little more than a month after the incident occurred.
The jury could, and apparently did, reasonably conclude that future medical expenses were not established. Although it was established that cosmetic surgical procedures were available to improve the condition of the scars, there was no evidence that David had any intention or plans of undergoing those procedures. The damage award was not itemized by the jury, but it can be assumed that the jury intended to compensate David and his father for the $8,700 in medical expenses actually incurred, leaving a general damage award of approximately $41,300. Considering the severity of the injury, the degree of permanent disability attributable to the numbness in the side of the leg and foot, and the permanent disfigurement, the general damage award is clearly on the low side, but is not so low as to amount to an abuse of the jury’s much discretion.
For the reasons assigned, the judgment of the district court is amended to increase the amount awarded to the plaintiffs from $35,000 to $50,000 and as amended is affirmed, at the cost of the defendants-appel-lees.
Amended, and as amended, affirmed.